UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| JEAN M. SANTAMORE, | : |
| Plaintiff, | : |
| v. | : File No. 1:10-cv-242-jgm |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | : |
| Defendant. | : |

MEMORANDUM AND ORDER
(Docs. 29, 34)

I.     Introduction

     Plaintiff Jean M. Santamore (Santamore) brings this action under 42 U.S.C. § 405(g) of the Social Security Act, requesting review and reversal of the Commissioner of Social Security's (Commissioner) denial of her application for disability insurance benefits.  Pending before the Court are Santamore's motion seeking an order reversing the Commissioner's decision (Doc. 29), and the Commissioner's motion seeking an order affirming her decision (Doc. 34).  For the reasons set forth below, Santamore's motion to reverse is denied and the Commissioners' motion to affirm is granted.

II.     Background

     A.     Procedural History

     In August 2008, Santamore filed applications for disability insurance benefits and supplemental security income, alleging she became disabled as of March 10, 2006.  (A.R. 88-91.)  On January 30, 2009, her applications were denied.  (A.R. 46-48.)  Following Santamore's timely request for reconsideration (A.R. 49-51), in June 2009, she was found to be disabled as of April 1, 2009, entitling her to supplemental security income benefits but not disability insurance benefits because her date last insured was March 31, 2008.  (A.R. 44-45.)  Santamore filed a timely request for an

administrative hearing (A.R. 52-54), which was held by Administrative Law Judge (ALJ) Paul Martin on May 11, 2010 (A.R. 19-39). Santamore represented herself, appearing via video-teleconference, and testified. Id. The ALJ issued a decision on May 14, 2010, concluding Santamore was not disabled from the alleged disability onset date through the date she was last insured. (A.R. 7-18.) The Decision Review Board did not timely complete its review of the claim and, on August 26, 2010, the ALJ's decision became the final decision of the Commissioner. (A.R. 1.)

On October 14, 2010, Santamore timely filed this action. (Doc. 3.) On August 4, 2011, this Court remanded the matter to the Agency for consideration of new and material evidence. (Doc. 13.) In November, the case was remanded to the ALJ. (A.R. 482.) On June 29, 2012, the ALJ issued a second decision again concluding Santamore was not disabled between March 10, 2006, her alleged disability onset date, and March 31, 2008, the date she was last insured. (A.R. 399-410.) The Decision Review Board declined jurisdiction and, on February 14, 2013, the ALJ's decision became the final decision of the Commissioner. (A.R. 380-81.) In April, this case was reinstated. (Doc. 20.)

  B.  <u>Relevant Facts</u>[1]

When Santamore applied for benefits in 2008, she was 51 years old. She dropped out of school during eleventh grade, but received her GED thereafter. She has worked as a cashier, housekeeper, nursing home aide, and dishwasher, mostly on a part-time basis. She has struggled with maintaining stable, habitable housing and reliable transportation. Santamore self-reported

---

[1] Except as necessary for context, the Court limits the recitation of relevant facts to the additional medical records submitted after the first hearing and to the period between March 10, 2006, the alleged onset date, and March 31, 2008, the date last insured, because, as Santamore states, the issue before the Court is whether she was disabled due to depression between those dates. See Doc. 29 at 7, 13. Except as noted, the facts are taken from Santamore's motion.

symptoms of depression since her teens with a significant increase in mental health problems after learning her eldest son had molested her other children, his half siblings.

In early 2000, a primary care provider noted chronic depression and urged her to seek counseling. (A.R. 193.) She attended a counseling session on March 3, 2000, and agreed to attend weekly sessions but requested help with transportation. (A.R. 684.) She did not attend or call to cancel her next two appointments. (A.R. 685-86.) She attended a session on March 31, with the clinician noting she was "ontime for session after having vacationed in Florida." (A.R. 687.) In April, she missed two more appointments, calling to cancel one. (A.R. 688-89.) She attended counseling sessions on June 23, 2000, again agreeing to attend weekly sessions, and June 30, but did not attend or call to cancel two July appointments. (A.R. 690-03.)

In late 2000, Santamore slid off the road down an embankment, hitting the vehicle's steering wheel causing back pain. (A.R. 203.) At a follow-up appointment on December 6, a primary care provider assessed her with chronic back pain, noted she was "very depressed appearing today," and planned for her to return to physical therapy. (A.R. 204.) On January 16, 2001, she attended a primary care appointment requesting disability forms be completed and was assessed with, inter alia, chronic depression. (A.R. 206.) On January 29, she was discharged from physical therapy because she attended two sessions between January 3 and January 15 with five no-shows to appointments, including an appointment on January 29 she had said she would attend. (A.R. 207.)

In April 2006, after moving back from Colorado, Santamore received medical care at a free clinic and self-reported her depressed mood. (A.R. 584.) At an appointment in May, depression was noted. (A.R. 582.) She was seen for a stomach lump and heel pain in December 2007, and depression was not noted. (A.R. 575.) However, on January 3, 2008, she saw a mental health provider, self-reporting as "wicked depressed for a long time," and "too depressed to seek a job," but "mainly healthy." (A.R. 694.) The clinician noted: "[Santamore] is having moderate to severe

3

symptoms of depression. It is difficult to assess whether this is the result of a depressive episode or complicated bereavement. She has no treatment history and has many complications in her life that are overwhelming her ability to cope." (A.R. 695.) She was diagnosed with adjustment disorder with mixed anxiety and depressed mood, assigned a GAF of 38, and recommended to attend weekly therapy for six weeks. Id. She attended sessions on January 9 and January 23 and did not return until August 2010. (A.R. 696-99.)

III.     Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability claims. Butts v. Barnhart, 388 F.3d 377, 380-81 (2d Cir. 2004). At the first step, the ALJ determines whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not, the ALJ determines whether the claimant has a "severe impairment." Id. §§ 404.1520(c), 416.920(b). If the ALJ finds the claimant has a severe impairment, the third step requires the ALJ to determine whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. §§ 404.1520(d), 416.920(d). A claimant is presumptively disabled if the impairment meets or equals a listed impairment. Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's residual functional capacity (RFC) precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The fifth and final step requires the ALJ to determine whether the claimant can do "any other work."  Id. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four, Butts, 388 F.2d at 383, and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record de novo to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard."  Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002) (citation omitted).  A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such a decision.  42 U.S.C. § 405(g).  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Poupore, 566 F.3d at 305 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  If substantial evidence supports the Commissioner's decision, the decision must be upheld even if substantial evidence also supports the claimant's position.  See Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990).

IV.    Discussion

Santamore argues the ALJ's conclusion at step two that her depression is not a severe medical impairment is not supported by substantial evidence.[2]  (Doc. 29 at 13-16.)  Specifically, she

---

[2] Santamore does not argue the Commissioner applied the wrong legal standard.

argues new evidence submitted after the first hearing demonstrates her depression was severe prior to her last insured date.  Id.  This evidence includes four mental health appointments in 2000, 2006-2007 records from the primary care clinic, and three mental health appointments in January 2008.  Id. at 13.  The ALJ found Santamore had severe impairments of a low back condition, a bilateral knee condition, and chronic obstructive pulmonary disease.  (A.R. at 402.)  The ALJ further found: "The claimant's medically determinable mental impairment of depression, considered singly and in combination with her severe impairments, does not cause her more than minimal limitation in her ability to perform basic mental work activities and is therefore nonsevere.  I am making this finding[] despite the additional evidence that has been submitted to me in relation to the claimant's treatment for depression from March through July 2000, and in January 2008."  (A.R. 402.)

With regard to the additional evidence of Santamore's mental health treatment in 2000, the ALJ noted she attended only four of ten scheduled sessions and concluded:  "One would expect a person suffering from a severe level of mental health impairment to avail themselves of all healthcare treatment modalities in order to mitigate the effect their symptoms have on their capacity for gainful work."  (A.R. 403.)  This Court does not endorse such pontification; it does, however, find the ALJ did not unreasonably dismiss evidence of Santamore's treatment in 2000.  The ALJ did consider the evidence, as reflected in the decision, and Santamore herself alleges an onset date of disability of March 2006.

With regard to the additional evidence of Santamore's mental health treatment in January 2008, the ALJ noted she attended three consecutive sessions and concluded the treatment was "rather insubstantial."  (A.R. 403.)  While the clinician noted Santamore had "moderate to severe symptoms of depression," she concluded "[i]t is difficult to assess whether this is the result of a depressive episode or complicated bereavement."  (A.R. 695.)  The ALJ did not unreasonably dismiss evidence of Santamore's treatment in January 2008 because he considered the evidence and

it, without more, does not support a conclusion that Santamore's depression was at a severe level for a period of twelve consecutive months.

Santamore also takes issue with the ALJ's "reliance" on the opinions of two state agency psychological consultants, arguing they did not review the additional mental health records and the ALJ should have sought an updated opinion. (Doc. 29 at 14-15.) To begin, Santamore bears the burden to prove she is disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Secondly, the Court notes the ALJ did not rely on the opinions of the State agency consultants in support of the finding; he noted his finding was "in accord with" those opinions (A.R. 404).

Overall, the record supports a finding that, during the alleged disability period, Santamore's depression did not cause "more than minimal limitation in her ability to perform basic mental work activities," (A.R. 402). See S.S.R. 85-28. The ALJ noted a lack of evidence of "sustained medical treatment" of Santamore's depression. (A.R. 403.) See Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (an ALJ "is entitled to rely not only on what the record says, but also on what it does not say.") Accordingly, I find the ALJ did not err at step two in determining Santamore's depression was not a "severe" impairment.

Santamore also takes exception to the ALJ's failure to account for limitations resulting from Santamore's depression in assessing her RFC. (Doc. 29 at 15.) The ALJ's decision, however, specifically considers "symptoms of mental health impairments" and "mental health deficits" in assessing Santamore's RFC. (A.R. 407.)

Lastly, Santamore argues the ALJ committed legal error in assessing her credibility. (Doc. 29 at 15-16; Doc. 37.) An ALJ must evaluate the credibility of a claimant and arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of symptoms. Lugo v. Chater, 932 F. Supp. 497, 503 (S.D.N.Y. 1996) (citation omitted). Here, the ALJ concluded

Santamore's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (A.R. 407.) He found her allegations of mental health deficits before her last date insured "to be somewhat overstated and exaggerated." (A.R. at 407.) The RFC -- that Santamore could perform light work with multiple specific limitations -- was based on and determined after a thorough review of the objective medical evidence. The ALJ evaluated Santamore's claims in light of her medical history. (A.R. 406-09.)

Given the evidence before him, the ALJ's ultimate finding that Santamore was not disabled, i.e. unable to engage in any substantial gainful activity because of an impairment expected to last more than a year, between March 10, 2006, the alleged onset date, and March 31, 2008, the date last insured, is supported by substantial evidence.

V.      Conclusion

Because substantial evidence supports the ALJ's findings, Santamore's motion seeking an order reversing the Commissioner's decision (Doc. 29) is DENIED, and the Commissioner's motion seeking an order affirming his decision (Doc. 34) is GRANTED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 29th day of May, 2014.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge